## Chester Valley Refrigeration Co. v. Altieri

*Maxwell H. Cohen*, for plaintiff.

*J. Joseph McCluskey*, for defendant.

DAVIS, P. J., July 27, 1965.—This matter comes before the court on petition to open judgment with stay of execution.

Pocono Chateau, Inc., undertook to purchase one used Model B Ballantyne pressure fryer from Chester Valley Refrigeration Co., plaintiff, by a conditional sale contract dated April 5, 1963, accepted by the latter on April 30, 1963. This contract provided for the payment, by successive monthly installments, of a net sum of $2,429.24. To further secure the transaction, plaintiff received two judgment notes, each dated April 5, 1963, and each in the amount of $2,429.24. One of these provided for payment by successive monthly installments and was executed by Pocono Chateau, Inc., over the signature of John Altieri, president, and Ledith Altieri, with the corporate seal affixed. Judgment was entered on this note in the prothonotary's office in Monroe County on August 1, 1963, as to May Term, 1963, no. 279. The second of these notes was payable on demand and was executed individually by John Altieri and Ledith Altieri, defendants. Judgment on this note was entered as to May Term, 1963, no. 108, on June 13, 1963. An answer was filed by plaintiff, and depositions were taken on March 27, 1964. Counsel have agreed that the testimony so taken will be applicable and may be used in the proceeding of Chester Valley Refrigeration Co. v. Pocono Chateau, Inc., May Term, 1963, no. 279.

The general principle governing petitions to open judgments, whether taken by default, as in Commonwealth v. Degillio, 197 Pa. Superior Ct. 568 (1962), or by confession, as in Liberty National Bank of Pittston v. Degillio, 406 Pa. 127 (1962), has been concisely stated by Mr. Justice Eagen in the latter case at page 129:

"To open a judgment, the petitioner must aver a valid defense and also establish the existence of equitable considerations which impress the court with the need for relief: Lened Homes, Inc. v. Dep't of Licenses, 386 Pa. 50, 123 A. 2d 406 (1956)".

In the instant petition, defendants rely upon four possible defenses: (1) that the note was totally blank except for the printed portions thereof when defendants signed it; (2) that defendants, at the time of signing the note, had no intention to confess judgment; (3) that plaintiff represented that the pressure fryer was of sufficient size to cook up to 60 individual portions of meat or fish at one time, and that this representation was false; and (4) that plaintiff had promised to send a representative to instruct defendants in the operation of the fryer, but failed to do so. None of these allegations have any merit.

As to the first point, counsel for defendants conceded that there was no variance in the agreed terms when the blanks were filled in after, rather than before, signature of the note. Indeed, the Act of April 6, 1953, P. L. 3, sec. 3-115, amended by the Act of October 2, 1959, P. L. 1023, sec. 3; 12A PS §3-115 (Uniform Commercial Code), provides:

"(1) When a paper whose contents at the time of signing show that it is intended to become an instrument is signed while still incomplete in any necessary respect it cannot be enforced until completed, but when it is completed in accordance with authority given it is effective as completed.

"(2) If the completion is unauthorized the rules as to material alteration apply (Section 3-407), even though the paper was not delivered by the maker or drawer; but the burden of establishing that any completion is unauthorized is on the party so asserting".

This section was applied in Caler v. Morrison, 33 D. & C. 2d 562, C. P., Washington Co., 1964, where the

court refused to strike a judgment confessed upon a note, wherein certain blanks had been filled in by typewriter after the makers had signed it.

As to defendants' second point, the testimony taken on deposition adds little to the averment in the petition that defendants did not understand that they were signing a judgment note. On direct examination by counsel, Mr. McCluskey, Mr. Altieri testified:

"Q At the time you signed these papers did you know or understand that one of them was a judgment note containing a confession of judgment clause?

"MR. COHEN: That is objected to for the same reason as the previous objection.

"BY MR. McCLUSKEY:

"A No.

"Q Did Mr. Stevens tell you you were signing a judgment note with a confession of judgment clause?

"A No".

On crossexamination by Mr. Cohen, Mr. Altieri testified:

"Q So you don't know what papers were signed with the first transaction, do you? You have no idea what papers were signed?

"A Well, they were contracts, that I know.

"Q But the kind and nature of the contracts, you have no recollection as to them at all?

"A No".

Nevertheless, when negotiating with Leonard Stevens, the salesman, and Samuel Gatano, the direct representative of Chester Valley Refrigeration Co., defendant John Altieri had read the papers with sufficient attention to be able to point out that the address of Pocono Chateau, Inc. was incorrectly written as Route 409 instead of Route 209. He called the error to the attention of Mr. Gatano, who thereupon made out a new paper with the correct address.

' On crossexamination of defendant Altieri, counsel brought out that he can read and write English, completed the 9th grade at school in Tennessee, signed a bond and mortgage in connection with the purchase of his hotel; served as an officer of a musicians' union; borrowed money from banks and financed the purchase of automobiles.

The factual situation here is comparable to that in Ralston v. Philadelphia Rapid Transit Co., Appellant (No. 1), 267 Pa. 257 (1920). This involved a trespass action in which plaintiff and his wife recovered a verdict and judgment for personal injuries to the wife. Defendant had placed in evidence a release signed by both plaintiffs. Ralston and his wife both testified that they had executed the release without reading it and in ignorance of its contents. The Supreme Court reversed an order denying a motion for judgment n.o.v. as to Ralston, and Mr. Justice Simpson, in his concurring opinion, said at page 276:

". . . it is supine negligence not to read the paper before signing it, and hence one who can read it or has an opportunity to get others to do so for him, cannot be heard to say he was not permitted to or did not or could not read it, or that he did not understand or was mentally incapable of understanding its contents (except where, in the latter instance, he gives facts showing an impaired mentality), unless by false representations, trick or fraud, calculated to deceive a man of his intelligence, and definitely and distinctly established, he was hurriedly misled into signing it without reading; and this is especially so where he knew he was dealing with a representative of defendant, who was trying to negotiate a settlement, and the sum paid was approximately that which plaintiff demanded, or was reached as a result of bargaining".

Defendants' third point relates to an alleged false representation that the pressure fryer had a food ca-

pacity of up to 60 pieces of meat or fish at one time. Plaintiff's answer admits that the capacity was represented as being up to "60 pieces of disjointed chicken". The advertising flyer shown to plaintiffs contained a similar statement. Defendant John Altieri testified, not that anyone said to him, but that he "understood" that the capacity of the fryer was supposed to be "60 *meals* in eight minutes"; but Ledith Altieri testified that Mr. Stevens, the salesman, had said it would cook "60 pieces of chicken every eight minutes". Thus, it is clear what representation had been made concerning the capacity of the pressure fryer. There is, however, a complete failure of evidence indicating that the representation was false. In the first place, a "piece of chicken", unlike a "piece of eight", is not a definite or uniform unit of measure. We decline to engage in a dissertation on the question how big a piece of chicken may be. In addition, defendants have never attempted to place even one piece of chicken in the frying basket.

Defendants' last point is that plaintiff failed to send an instructor as promised. The pressure fryer was delivered personally by Mr. Gatano on April 22, 1963, and both defendants signed the receipt. Three weeks later, Mr. Gatano testified that he telephoned the Altieris to arrange for sending a trainer; that Mrs. Altieri answered and said: "Well, we changed our mind, we think we are going to turn this thing back". No electrical connection for the fryer was provided; and defendant John Altieri's testimony as to whose responsibility it was appears to be evasive:

"BY MR. COHEN:

"Q Sir, did they [Stevens and Gatano] tell you they were going to have someone put an electrical connection from where your line ended to where this machine was to be set up?

"A Maybe not, but that is what I understood".

From the foregoing, it is clear that defendants have failed to state any meritorious defense warranting an order opening the judgment.

In the course of the depositions, counsel for plaintiff accidentally elicited the following testimony from Samuel Gatano:

"Q And what is the name of your corporation?

"A Chester Valley Refrigeration Co.

"Q Is that a Pennsylvania Corporation, sir?

"A That is a partnership".

This fact may have important implications, inasmuch as the judgment in this case appears to have been entered in the firm name of a partnership. See Pennsylvania Rule of Civil Procedure 2127 (a).

ORDER

And now, July 27, 1965, the petition to open judgment filed in the within case is dismissed, and stay of proceedings entered September 26, 1963, is hereby terminated.